UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| KIRK KEVEN RICE, | ) |
| | ) |
| Petitioner, | ) Case No. 1:05-cv-549 |
| | ) |
| v. | ) Honorable Robert Holmes Bell |
| | ) |
| MICHIGAN PAROLE BOARD et al., | ) |
| | ) |
| Respondents. | ) |
| _____ | ) |

**OPINION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that Petitioner's Fourteenth Amendment due process claim and Fifth Amendment claim lack merit on their face. The Court, however, will serve the petition with regard to Petitioner's Fourteenth Amendment equal protection claim.

**Discussion**

I.      Factual Allegations

Petitioner is incarcerated in the Deerfield Correctional Facility. He was convicted in the Livingston County Circuit Court of one count of first-degree criminal sexual conduct (CSC) and three counts of second-degree CSC. He was sentenced on October 17, 1994, to concurrent prison terms of seven to twenty years for the first-degree CSC conviction and five to fifteen years for each of the second-degree CSC convictions. Since he became eligible for parole in 1999, Petitioner has been denied parole six times. Petitioner was most recently denied parole on May 27, 2004.

The Michigan Parole Board must follow the parole guidelines promulgated by the Michigan Department of Corrections. *See* MICH. COMP. LAWS § 791.233(e)(5). The parole board may depart from the guidelines by denying parole to a prisoner who scores under the guidelines as having a high probability of parole, but any such departure "shall be for a substantial and compelling reasons stated in writing." *See* MICH. COMP. LAWS § 791.233(e)(6). Petitioner scored under the parole guidelines as having a high probability of parole. In denying Petitioner's parole, the board provided the following reason for departing from the parole guidelines: "P continues to deny involvement and responsibility for the offense for which he is serving, he also failed to successfully completed [sic] therapy program. P has not demonstrated to PB that risk to public is reduced." *See* 5/27/04 Parole Board Notice of Decision, Ex. B.

Petitioner asserts several constitutional violations arising from the denial of his parole. Petitioner first claims that the parole board failed to provide a legitimate "substantial and compelling reason" for departing from the parole guidelines in violation of his due process rights.

Petitioner contends that the mandatory language of MICH. COMP. LAWS § 791.233(e)(6) creates a liberty interest in parole for prisoners who score as having a high probability of parole. Petitioner also alleges that, as a sex offender, he was automatically given a mental health score of -5 in violation of his due process rights. In addition, Petitioner claims that the parole board violated his Fifth Amendment right against self-incrimination by denying his parole because he continues to maintain his innocence. Finally, Petitioner claims that the parole board violated his right to equal protection by denying him parole for failing to admit to the offense and complete sex offender treatment (SOT), while releasing on parole other similarly situated sex offenders who denied their offenses and did not complete SOT.

## II.     Exhaustion of State Court Remedies

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

Under recent statutory and rule amendments by the Michigan Legislature and Michigan Supreme Court, respectively, a prisoner no longer has an ability to appeal a parole denial under state statute. The former version of MICH. COMP. LAWS § 791.234(8) provided that the grant or denial of parole by the Michigan Parole Board could be appealed to the circuit court by the prisoner, prosecutor or victim. *See* MICH. COMP. LAWS § 791.234(8) (West. 1999). The new version eliminated the ability of a prisoner to appeal a parole denial, and provides only that a grant of release on parole may be appealed by the prosecutor or the victim. *See* MICH. COMP. LAWS § 791.234(9) (as amended by 1999 Mich. Pub. Acts 191). The legislation was approved on November 24, 1999. Following the lead of the Michigan Legislature, the Michigan Supreme Court amended Michigan Court Rule 7.104, effective March 10, 2000, eliminating the provisions regarding the methods by which a prisoner could appeal a parole denial. *See* M.C.R. 7.104(D)(1), (2)(a). Consequently, because state statute prohibits a prisoner from appealing a parole denial, Petitioner appears to have no available state court remedy in which to exhaust his claims.

      III.    Merits

          A.    **Fourteenth Amendment - Due Process**

Petitioner first claims that the parole board violated his due process rights by failing to provide a legitimate "substantial and compelling reason" for departing from the parole guidelines and by giving him a mental health score of -5. To sustain his claims, Petitioner must first establish that he has a liberty interest in parole that is entitled to protection by the Due Process Clause. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see Bd. of Pardons v. Allen*, 482 U.S. 369 (1987). Liberty interests may arise from the Constitution itself or from the provisions of state law. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983). A prisoner has no constitutional or inherent right to be

released on parole before the expiration of the prisoner's sentence. *Greenholz v. Inmates of the Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). The state is therefore free to institute parole systems, but it has no duty to do so. *Id.*; *see Rose v. Haskins*, 388 F.2d 91, 93 (6th Cir. 1968). A prisoner has a liberty interest in the possibility of parole if, but only if, state law creates a legitimate expectation of parole release by the use of mandatory language limiting the discretion of the parole board. *See Allen*, 482 U.S. at 373-75. In the absence of a state-created liberty interest, the parole board can deny release on parole for any reason or no reason at all, and the Due Process Clause has no application. *See Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 236 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan procedural authorities to deny parole," held that Michigan's parole system does not create a liberty interest in parole. Subsequent to its 1994 decision, the Sixth Circuit has recognized the continuing validity of *Sweeton* and has continued to find that Michigan's parole scheme creates no liberty interest in being released on parole. *See Ward v. Stegall*, No. 03-1804, 2004 WL 614581 (6th Cir. March 24, 2004); *Martin v. Ohio Adult Parole Auth.*, No. 03-3642, 2003 WL 22976604, at *1 (6th Cir. Dec. 8, 2003); *Bullock v. McGinnis*, No. 00-1591, 2001 WL 180978, at *2 (6th Cir. Feb. 14, 2001); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *1 (6th Cir. Nov. 1, 2000); *Hawkins v. Abramajtys*, No. 99-1995, 2000 WL 1434695, at *2 (6th Cir. Sept. 19, 2000); *Irvin v. Michigan Parole Bd.*, No. 99-1817, 2000 WL 800029, at *2 (6th Cir. June 14, 2000); *Clifton v. Gach*, No. 98-2239, 1999 WL 1253069, at *1 (6th Cir. Dec. 17, 1999). The Michigan Supreme Court also has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Michigan Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Furthermore, the Sixth Circuit has held in unpublished decisions that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Michigan Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Michigan Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). In *Carnes v. Engler*, No. 03-1212, 2003 WL 22177118 (6th Cir. Sept. 19, 2003), the plaintiff argued that the Michigan parole scheme created a liberty interest in parole because it places severe restrictions on the board's discretion to grant or deny parole, and because it requires the board to provide "substantial and compelling reasons" for departing from the parole guidelines. The Sixth Circuit rejected the plaintiff's arguments, holding that "the ultimate authority to grant parole still lies with the discretion of the parole board." *Carnes*, 2003 WL 22177118, at *1. Because Plaintiff has no liberty interest in parole, he fails to state a claim for a violation of his procedural due process rights.

B. **Fifth Amendment**

Petitioner claims that the parole board violated his Fifth Amendment rights by denying his parole because he continues to maintain his innocence. Part of the reason given by the parole board for departing from the guidelines to deny Petitioner parole was the fact that he "continues to deny his involvement and responsibility for the offense." The Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This right remains available to Petitioner despite his conviction.

*See Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) ("A defendant does not lose this protection by reason of his conviction of a crime . . . ."); *cf. McKune v. Lile*, 536 U.S. 24, 48–54 (2002) (O'Connor, J., concurring) (applying the full blown Fifth Amendment analysis to a prisoner's claim that the prison's requirement that he participate in a sex offender treatment program violated his constitutional rights). The Supreme Court has recognized that the Fifth Amendment extends not only to criminal proceedings, but any proceeding in which the answers might incriminate the individual in a *future* criminal proceeding. *Allen v. Illinois*, 478 U.S. 364, 368 (1986) (emphasis added). "A valid assertion of the fifth amendment privilege exists where a witness has reasonable cause to apprehend a real danger of incrimination. A witness must, however, show a 'real danger,' and not a mere imaginary, remote or speculative possibility of prosecution." *In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983) (citations omitted).

Petitioner was convicted more than ten years ago of the CSC offenses for which he is being asked to admit guilt. Petitioner does not allege that any appeal or post-conviction proceedings remain pending with regard to his conviction. Double jeopardy considerations would preclude any admission by Petitioner regarding the offense for which he was previously convicted from being used against him. Therefore, the possibility of any admission to those sex offenses incriminating him in the future is no more than a remote and speculative possibility, which is insufficient to trigger the Fifth Amendment's protection against self-incrimination. *See Hawkins v. Morse*, No. 98-2062, 1999 WL 1023780, at *2 (6th Cir. Nov. 4, 1999) ("[I]t cannot be said that the alleged pressure to admit that he committed the crime for which he is incarcerated in order to improve his chances for parole forces Hawkins to incriminate himself in violation of the Fifth Amendment."); *see also Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 286 (1998) (Ohio's

voluntary clemency interview did not violate Fifth Amendment privilege against compelled self-incrimination).

Petitioner's reliance upon *United States v. Antelope*, 395 F.3d 1128 (9th Cir. 2005) is misplaced. In that case, one of the petitioner's probation terms was to participate in the Sexual Abuse Behavior Evaluation and Recovery program (SABER). As part of SABER, the petitioner was required to complete a sexual history biography and a full disclosure polygraph verifying his full sexual history. *Id*. at 1131-32. The petitioner, therefore, was required to disclose not only the sexual history pertaining to the sex crimes for which he had been prosecuted and convicted, but past sexual history that could result in new criminal prosecutions. The Ninth Circuit held that requiring the petitioner to complete the SABER program violated his Fifth Amendment privilege against self-incrimination where state law requires the program counselor to report participants' sex crimes against minors to authorities. *Id.* The court specifically distinguished a case in which a prison treatment program required a prisoner to admit guilt only as to the crimes for which he was imprisoned on the ground that it did not put the prisoner in danger of future prosecution. *Id.* at 1134 *(citing Neal v. Shimoda*, 131 F.3d 818, 833 (9th Cir. 1997)) (holding that a prison treatment program requiring inmates to admit guilt of the crime for which they were imprisoned did not violate the Fifth Amendment)). In this case, the parole board cited only Petitioner's refusal to admit to the sexual offenses for which he was convicted. Consequently, he fails to state a claim for violation of his Fifth Amendment rights.

C.  **Fourteenth Amendment - Equal Protection**

Petitioner claims that the parole board violated his right to equal protection by denying him parole for failing to admit to the offense and complete sex offender treatment (SOT),

while releasing on parole other similarly situated sex offenders who denied their offenses and did not complete SOT. Petitioner provides a list of thirty such prisoners. *See* List of 'Inmates That Have Been Released Without Therapy, In Denial, And On Their Minimum Sentence," Ex. E. Petitioner's allegations are sufficient to state a claim under the Equal Protection Clause.

## **Conclusion**

In light of the foregoing, the Court will summarily dismiss Petitioner's Fourteenth Amendment due process claim and Fifth Amendment claim pursuant to Rule 4 because they lack merit on their face. The Court, however, will serve the petition with regard to Petitioner's Fourteenth Amendment equal protection claim.

An Order consistent with this Opinion will be entered.


Date:   September 21, 2005              /s/ Robert Holmes Bell
                                         ROBERT HOLMES BELL
                                         CHIEF UNITED STATES DISTRICT JUDGE