UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

KIRK KEVIN RICE,

           Petitioner,                  Case No. 1:05-cv-549

v.                                       Honorable Robert Holmes Bell

MICHIGAN PAROLE BOARD et al.,

           Respondents.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. After a jury trial, Petitioner was convicted in the Livingston County Circuit Court of one count of first-degree criminal sexual conduct (CSC) and three counts of second-degree CSC. (Pet. at 1, docket #1.) On October 17, 1994, the Livingston County Circuit Court sentenced Petitioner to concurrent prison terms of seven to twenty years for the first-degree CSC conviction and five to fifteen years for each of the second-degree CSC convictions.[1] Petitioner does not challenge his convictions or sentence. Instead, he challenges the Michigan Parole Board's denial of his parole. Since he became eligible for parole in 1999, Petitioner has been denied parole seven times, most recently on May 31, 2006. (Pet. at 6; May 31, 2006 Notice of Decision at Supp., docket #12.) The instant petition, however, concerns the denial of Petitioner's parole by the Michigan Parole Board on May 21, 2004. (Pet. at 6; Exs. B-1 & B-2 to Pet.)

---

[1] The Court retrieved information regarding Petitioner's sentence from the MDOC Offender Tracking Information System, available at http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=227927.

Petitioner filed his application for habeas corpus relief on or about August 16, 2005, asserting several constitutional claims regarding the denial of his parole. On September 21, 2005, the Court issued an opinion and order (dockets #2-3) dismissing all of Petitioner's grounds for habeas corpus relief except for an equal protection claim. In these claims, Petitioner alleges that the Parole Board violated his equal protection rights by denying his parole for failing to complete the recommended Sex Offender Treatment (SOT) program, while releasing other similarly situated CSC offenders on parole, who also failed to complete their recommended SOT program. (Pet. at 2, 10.)

Respondent has filed an answer to the petition (docket #7) stating that Petitioner's equal protection claim should be denied because it has no merit. On August 17, 2006, Petitioner filed a motion to supplement (docket #9.) On October 26, 2006, this Court entered an order granting Petitioner's request to supplement his habeas petition with exhibits of Petitioner's May 31, 2006 parole denial and to reply to Respondent's answer but denying several other requests (docket #11). Petitioner subsequently filed the supplement to his petition (docket #12) and a response (docket #14) to Respondent's answer. Upon review and applying the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 standards, I find that Petitioner fails to raise a meritorious equal protection claim. Accordingly, I recommend that the petition be denied.

**Procedural History**

A. **Parole Board Proceedings**

Since he became eligible for parole in 1999, Petitioner has been denied parole seven times. (Pet. at 6; May 31, 2006 Notice of Decision at Supp.) The instant petition concerns Petitioner's parole denial by the Parole Board on May 21, 2004. (Pet. at 6; Exs. B-1 & B-2 to Pet.)

At that time, Petitioner's parole guidelines score was +8, which represents a high probability of parole. (Ex. A-3 to Pet.)  In exercising its statutory discretion, the Michigan Parole Board must follow the parole guidelines promulgated by the Michigan Department of Corrections (MDOC). *See* MICH. COMP. LAWS § 791.233(e)(5).  The parole board may depart from the guidelines by denying parole to a prisoner who scores under the guidelines as having a high probability of parole, but any such departure "shall be for a substantial and compelling reasons stated in writing."  MICH. COMP. LAWS § 791.233(e)(6).

In denying Petitioner's parole on May 21, 2004, the Parole Board provided the following substantial and compelling reasons for departing from the parole guidelines in Petitioner's MDOC Parole Board Notice of Decision (Notice of Decision): "P continues to deny involvement and responsibility for the offense for which he is serving, he also failed to successfully completed [sic] therapy program.  P has not demonstrated to PB that risk to public is reduced." (Ex. B-1 to Pet.)

The Parole Board also provided the following reasons in support of its action in Petitioner's Notice of Decision:

> **Crime & Criminal Behavior**
> **The assaultive crime**:
> History of/or currently serving for CSC
>
> **The sexually motivated crime:**
> Violated a position of trust or authority
> Involved minor/child victim
> Involved a family member or acquaintance
>
> **Regarding the crime, it is our belief:**
> Prisoner denies the offense

    **Program Involvement**
        **Psychological programming has been recommended or required and:**
        Prisoner was terminated for poor performance or for disciplinary reasons

        **Psychological programming has been recommended or required and:**
        Prisoner is not amenable to treatment

        **Through involvement in community programs, the prisoner has:**
        Been denied community placement due to a special designation

(Exs. B-1 & B-2 to Pet.) The Parole Board denied Petitioner's parole for twenty-four months. (Ex. B-1 to Pet.)

In the supplement to his habeas petition, Petitioner submitted his May 31, 2006 Notice of Decision. Once again, Petitioner scored as having a high probability of parole under the parole guidelines but the Parole Board denied Petitioner's parole. (May 31, 2006 Notice of Decision at Supp.) In denying Petitioner's parole, the Parole Board listed the following substantial and compelling reasons for departing from the parole guidelines: "P denies he molested the 5 yr old girl, says she lied as part of a family feud. P's denial has prevented him from complet[ing] therapy designed to reduce risk [sic]. Absent affirmative assurance that risk has been reduced, P is still viewed as a threat." (*Id.*) The Parole Board denied Petitioner's parole for eighteen months. (*Id.*)

    B.    **Exhaustion**

Before this Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claims. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459

U.S. 4, 6 (1982)). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

Petitioner correctly asserts that he cannot exhaust his equal protection claim because the State of Michigan has eliminated the right of a prisoner to appeal a parole denial. (Pet. at 2-3); *see also* 28 U.S.C. § 2254(b)(1); *O'Sullivan*, 526 U.S. at 842. Under recent statutory and rule amendments by the Michigan Legislature and Michigan Supreme Court, respectively, a prisoner no longer has an ability to appeal a parole denial under state statute. The former version of MICH. COMP. LAWS § 791.234(8) provided that the grant or denial of parole by the Michigan Parole Board could be appealed to the circuit court by the prisoner, prosecutor or victim. *See* MICH. COMP. LAWS § 791.234(8) (West. 1999). The new version eliminated the ability of a prisoner to appeal a parole denial, and provides only that a grant of release on parole may be appealed by the prosecutor or the victim. *See* MICH. COMP. LAWS § 791.234(11) (as amended by 1999 Mich. Pub. Acts 191). The legislation was approved on November 24, 1999. Following the lead of the Michigan Legislature, the Michigan Supreme Court amended Michigan Court Rule 7.104, effective March 10, 2000, eliminating the provisions regarding the methods by which a prisoner could appeal a parole denial. *See* MICH. CT. R. 7.104(D)(1), (2)(a).

The Sixth Circuit Court of Appeals has held that a Michigan petitioner's failure to exhaust his equal protection challenge to parole procedures is excused under 28 U.S.C.

§ 2254(b)(1)(B)(i) because Michigan law does not provide a state corrective process for such a claim. *Jackson v. Jamrog,* 411 F.3d 615, 618 (6th Cir. 2005).[2] Consequently, because state statute prohibits a prisoner from appealing a parole denial, Petitioner appears to have no available state court remedy in which to exhaust his claims.

## Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d

---

[2]Certain types of parole denial claims involving radical defects in legal process (which Petitioner does not allege here) may be cognizable in state habeas corpus proceedings or by complaint for an order of mandamus. *Jamrog,* 411 F.3d at 621; *see also Morales v. Mich. Parole Bd.,* 676 N.W.2d 221, 229-30 (Mich. Ct. App. 2003).

at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). "Yet, while the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001).

A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

**Discussion**

In his application for habeas corpus relief, Petitioner contends that the Michigan Parole Board violated his equal protection rights by denying his parole for failing to complete the recommended SOT program, while releasing other similarly situated sex offenders on parole, who also failed to complete their recommended SOT program. (Pet. at 2, 10.) The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST., amend XIV; *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985). The Equal Protection Clause does not forbid all classifications, but simply prevents governmental decision makers from treating differently persons who are similarly situated in all relevant respects. *City of Cleburne*, 473 U.S. at 439; *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920); *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002) (the Clause "protects against arbitrary classifications, and requires that similarly situated persons be treated equally.").

"Strict scrutiny of an alleged equal protection violation is only employed if the classification at issue discriminates on the basis of a suspect criterion or impinges upon a fundamental right." *Hadix v. Johnson*, 230 F.3d 840, 843 (6th Cir. 2000). Because Petitioner does not allege that he is a member of a suspect class or that the Parole Board's action implicates a fundamental right, Petitioner is not entitled to strict scrutiny. Prisoners and specifically, convicted sex offenders, are not a suspect class. *Id.*; *Cutshall v. Sundquist*, 193 F.3d 466, 482 (6th Cir. 1999)

(convicted sex offenders are not a suspect class); *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997); *see also Zehner v. Trigg*, 133 F.3d 459, 463 (7th Cir. 1997) (dismissing as "completely unsupported" the idea that prisoners are a suspect class). Further, any parole classification or law does not implicate a fundamental right because there is no constitutional right to release on parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994). Instead, the decision to deny Petitioner's parole need only be rationally related to a legitimate governmental interest. *See United States v. Kras,* 409 U.S. 434, 446 (1973); *Hampton,* 106 F.3d at 1286.

In order to establish an equal protection violation based on rational basis analysis, Petitioner must show that the Michigan Parole Board's decision differentiated between similarly situated persons and is not rationally related to any conceivable legitimate governmental purpose. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Hadix*, 230 F.3d at 843. In support of his claim, Petitioner attached a list of thirty "prisoners who ALL were released WITHOUT taking SOT" to his petition. (Pet. at 10; Exs. E-1, E-2 & E-3 to Pet.) The list describes each inmate with one or more of the following factors: (1) that the inmate was incarcerated for CSC; (2) that the inmate never had any group therapy; (3) that the inmate maintained his innocence; (4) that the inmate did not serve all of his sentence; and (5) that the inmate was released on parole. (Exs. E-1, E-2 & E-3 to Pet.) In his petition, Petitioner also states that Patrick Dunlap is another example of a prisoner who has been paroled. (Pet. at 10.) Finally, Petitioner compares his case to William Hackel, a Michigan prisoner who was released on parole in 2003 without completing his recommended SOT program. (Pet. at 10-11; Ex. G-1 to Pet.) Petitioner alleges that Hackel maintained his innocence

"on the record" but told the Parole Board "exactly what he need[ed] to say to get out on parole, ALL without ANY SOT, . . . ." (Pet. at 10-11.) Petitioner provides the following explanation of how he is similarly situated to Hackel (verbatim):

> Under "Reasons in Support of Parole Board Actions - Correctional Adjustments" for Mr. Hackel, the same reasons are also addressed in the same positive manner in Plaintiff's Case Summary Report. Mr. Hackel's Case Summary states his "willingness to attend" SOT in the community. Plaintiff has also "inquired" into no less than 3 different "community" SOT programs that are willing to accept him on parole with acceptance given to the Parole Board along with my representative stating she had personally gotten acceptance from a State approved program but was REJECTED as "not acceptable" by the Parole Board. Mr. Hackel has a substance abuse history, Plaintiff has NONE. Mr. Hackel has "letters encouraging Parole". Plaintiff has also submitted numerous letters of support, backed-up by my representative(s) and also had over 40 letters of community support at my sentencing. Mr. Hackel settled a lawsuit against him, Plaintiff has had NO such action against him. As mention earlier, Mr. Hackel's "considerable remorse" was accepted without question as true, without ANY psychological group taken infront of a psych to professionally evaluate his "considerable remorse" as only as scam by a convicted felon to say what the Parole Board wanted to hear to get a Parole. But was Paroled ONLY because of his "favorable status" as an ex-state employee with no criminal background. Plaintiff has NO criminal background either. Mr. Hackel was "exploring" several job options. Plaintiff "has" several job options when Paroled. To top off Mr. Hackel's "favorable status" by the Parole Board, the Parole Board actually called his representative, his wife, which has never been heard of and goes against what I've been told every time I've seen the Board that if my rep was not there when it's my turn that I had to go without the rep. These are just a few of the tit-for-tat examples that Mr. Hackel and Plaintiff ARE "similarly situated" prisoners among other things as charges and paroleable conditions of those charges, along with the other 31 named, released prisoners.

(Pet. at 11-12) (emphasis in original.)

Petitioner fails to establish an equal protection violation. Petitioner identifies the thirty former inmates, who have purportedly been granted parole. (Petition, Ex. E-1). He has not, however, established that these inmates were "similarly situated to [Petitioner] in *all respects that are material to the parole assessment.*" *Barker v. Conerly,* No. Civ. 05CV74408DT, 2006 WL

305643, at *3 (E.D. Mich. Feb. 9, 2006) (citing *Linger v. Akram*, 23 F. App'x 248, 252 n.5 (6th Cir. 2001)) (emphasis added). The list provided by Petitioner (which is, incidentally, hearsay) fails to identify their precise crime of conviction[3] or institutional record. It does not demonstrate how they are similarly situated to Petitioner in all material respects. Without demonstrating that the thirty former prisoners are similarly situated in all material respects, Petitioner fails to demonstrate an equal protection violation in regards to the thirty former inmates. Indeed, it is difficult to envision similarly situated prisoners when it comes to parole release. The decision to release a convicted felon before he completes his sentence is an exercise of discretion. It involves assessing the entire individual, not a mathematical calculation. The essential inquiry is a predictive one -- whether, under "all the facts and circumstances," the prisoner "will not become a menace to society or the public safety." MICH. COMP. LAWS § 791.233(1)(a). Selection of inmates is as much art as science, and a combination of factors deemed sufficient to release one inmate may be deemed uncompelling in another case, because of subtle differences in history, attitude, and institutional adjustment. *See Barker,* 2006 WL 305643, at *3 (citing *Davis v. Thomas*, 269 F. Supp. 2d 335, 337 (S.D.N.Y. 2003)) ("In light of the number of factors that a parole board must consider in determining whether to grant a prisoner parole release, a habeas petitioner's bare assertion that his parole application was rejected while similarly situated prisoners were granted parole is insufficient to state a claim upon which habeas relief can be granted.")

---

[3] The crime of "CSC," or criminal sexual conduct, has four distinct degrees, ranging from first-degree (essentially aggravated rape) punishable by up to a life term, to fourth-degree (unconsented sexual touching not involving penetration), a high misdemeanor punishable by up to two years in prison. *See* MICH. COMP. LAWS §§ 750.520b-.520e. Petitioner was convicted of first-degree CSC. He is obviously not "similarly situated" with those inmates convicted of lesser offenses.

Although Petitioner exhaustively described the similarities between his case and Hackel's case, Petitioner still fails to establish an equal protection claim. In his application for habeas corpus relief, Petitioner admitted that Hackel showed remorse for his crimes to the Parole Board. (Pet. at 10-11.) Petitioner, however, continues to deny any involvement and responsibility for his crimes. (Exs. B-1 & B-2 to Pet; May 31, 2006 Notice of Decision at Supp.) The remorse of an inmate is a proper consideration by the Parole Board in determining whether parole is appropriate. Accordingly, Petitioner's case is not similar to Hackel's case in all respects that are material to the parole assessment. *See Barker*, 2006 WL 305643, at *3 (citation omitted); s*ee also Lovely v. Hughes*, No. 96-5536, 1997 WL 112386, at *1 (6th Cir. Mar. 12, 1997) (affirming district court's dismissal of § 1983 claim alleging that the denial of a plaintiff's parole violated his Fourteenth Amendment right of equal protection because similarly-situated prisoners were granted parole).

Further, the Parole Board's decision was rationally related to a legitimate governmental purpose. *See Vill. of Willowbrook*, 528 U.S. at 564. "The purpose of a parole is to keep a prisoner in legal custody while permitting him to live beyond the prison enclosure so that he may have an opportunity to show that he can refrain from committing crime." *People v. Gregorczyk*, 443 N.W.2d 816, 821 (Mich. Ct. App. 1989) (citation omitted). Protection of public safety is a stated purpose of Michigan's parole statutes. *Hopkins v. Mich. Parole Bd.*, 604 N.W.2d 686, 689 (Mich. Ct. App. 1999) ("First and foremost, the [Parole Board] may not grant a prisoner liberty on parole until it 'has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety'") (quoting MICH. COMP. LAWS § 791.233(1)(a)). Preventing the early release of potentially violent inmates is a legitimate governmental interest. *See Wottlin v. Fleming*,

136 F.3d 1032, 1037 (5th Cir. 1998) (affirming rejection of equal protection challenge raised by § 2241 petitioner; Bureau of Prisons rule, which provided that inmates having prior convictions for homicide, forcible rape, robbery, or aggravated assault were not eligible for early release was "rationally related to the legitimate governmental interest of preventing the early release of potentially violent inmates"). In light of "the number of factors that a parole board must consider in determining whether to grant a prisoner parole release," *see Barker*, 2006 WL 305643, at *3, and the legitimate government interest in parole, Petitioner fails to establish an equal protection claim.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.

Dated:  November 4, 2008               /s/  Joseph G. Scoville
                                       United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).